### TEXAS & P. RY. CO. v. CONWAY.
### (No. 1532.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 2, 1915.)

CARRIERS ⟳269—CARRIAGE OF PASSENGERS— CONNECTING CARRIERS—LIABILITY FOR IN- JURIES TO PASSENGERS.

A carrier of passengers is not liable for illness and humiliation caused the plaintiff by its failure to connect with a train on another road, where its agents sold tickets only to the connecting point, though its trainmen represented to the plaintiff that she could catch a train and would not have to stay all night at the connecting point, since they had no authority to make such representations.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1060–1063; Dec. Dig. ⟳269.]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Mrs. Daisey Conway against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment for defendant rendered.

Train No. 105, from St. Louis, Mo., to Palestine, Tex., known as the "Fast Mail," was operated by appellant over its line of railway from Texarkana, by Marshall, to Longview Junction, and by the International & Great Northern Railway Company over its line of railway from Longview Junction to Palestine. From Texarkana to Longview Junction the train consisted of mail, baggage, and express cars, and a car for passengers. It was due to arrive at Longview Junction between 5 and 6 o'clock p. m. Ordinarily, on its arrival at that point, the mail, baggage, and express cars were taken up by the International & Great Northern Railway Company's train waiting there, and carried on without delay to Palestine. The passenger car was not carried on, but passengers for points on said International & Great

Northern Railway Company's line of railway changed from that car to cars in the waiting train. Occasionally, when the train out of Texarkana was late, the International & Great Northern train would not wait for it at Longview Junction. In those instances passengers on the late train for points on the International & Great Northern Railway south of Longview Junction had to wait there until the next morning, when they could go on on another train leaving that place for points on said International & Great Northern Railway. On September 12, 1913, appellee, who resided at Marshall, desired to go with her six children from that place to Palestine on said train No. 105. She had passes for herself and her children over the International & Great Northern Railway from Longview Junction to Palestine. At appellant's station in Marshall she ascertained that the train would reach there more than an hour late. She applied to appellant's ticket agent for tickets for herself and children from Marshall to Longview Junction, advising him that she had passes from that point to Palestine, that she wished to go through to Palestine on said train No. 105, and inquired of him if the train would go through, advising him at the time that she did not wish to take it if it did not go through to that point. The agent sold her the tickets and stated to her that his instructions were "to tell the passengers," quoting from her testimony, "that when the train was late they would stop in Longview, but to ask the man at the train, and if he tells you it will go through it will be all right to get on." When the train reached Marshall, appellee, as she was directed to do by appellant's ticket agent, asked "the man at the train" if it would go through to Palestine, and was told that it would. Her account of what then occurred was as follows:

"I found the porter and the brakeman at the steps of the car when I got there, who I thought to be the conductor and the porter. I asked the brakeman, and he replied that the train would go through to Palestine. My nephew, who was with me, also asked him, and he told him that it would go through to Palestine. When I got on the steps of the car, I was very particular and turned around and inquired again and asked him if he was sure that the train went through to Palestine, and the negro porter replied, 'Sure, lady; get right on and you will go right through.'"

At Marshall the conductor in charge of the train ascertained from orders there received by him that the International & Great Northern Railway Company's train would not wait at Longview Junction for his train, and when he took up appellee's tickets advised her of that fact, and that she would have to remain at Longview Junction until the following morning, when another train left that point for Palestine. A heavy rain was falling at Longview Junction when train No. 105 reached there, and appellee and her children in leaving the car and going to a

---

⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

hotel got wet, and thereby were made sick. Not expecting she would be delayed at Longview Junction, appellee had not carried with her money sufficient to pay her hotel bill at that point, and therefore was subjected to the humiliation of having to ask the hotel proprietor, a stranger to her, to credit her. On the ground that appellant's employés were negligent in telling her at Marshall that the train would go through to Palestine, appellee by her suit sought a recovery of damages against appellant. The appeal is from a judgment in her favor for $250.

F. H. Prenderghast, of Marshall, for appellant. John W. Scott and Wm. Caven, both of Marshall, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] The trial court instructed the jury to find for appellee if they believed— "the plaintiff sought to inform herself as to the movements and connections of the train upon which she was about to take passage, and that in seeking such information she was misled by the statements of the agents and servants of the defendant company, and you further believe she suffered injury, and that such injury, if any, was the direct and proximate result of the information which misled her, if you believe she received information which misled her."

Appellant insists that the instruction was erroneous, because it was not, it asserts, bound by the statement made by its brakeman and porter to appellee that the train would go through to Palestine. This contention is based on the further contention that appellant's employés could not bind it by statements in regard to the movement of trains on a line of railway operated by another company and beyond the point to which it had contracted to carry appellee. We think the contention should be sustained. Railway Co. v. Gants, 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780. That appellee was not in a position to claim that appellant had bound itself to carry her further than Longview Junction was established by the fact that the tickets it sold to her were for that point. That the agent who sold her the tickets did not have authority and did not undertake to bind appellant by representations that the train on which she took passage would go through to Palestine was established by her testimony showing that that agent told her, in reply to inquiry made by her of him, that his instructions were to tell persons who desired to go on that train to points beyond Longview Junction that same, when late, as it was on that occasion, would not go further than Longview Junction. Being without authority himself, as she was advised, to bind appellant by a statement that the train would go to Palestine, the agent who sold her the tickets could not by referring her to appellant's porter and brakeman bind it by statements made to her by them. Appellee therefore was not entitled to claim that liability on the part of appellant arose in her favor because of anything appellant's ticket agent did or said. Such liability, if any there was, must have been referred to the representations made to her by the porter and brakeman of whom she made inquiry after she had entered into the contract with appellant whereby it had undertaken to carry her to Longview Junction. It is not, and reasonably could not be, contended, that appellant's porter or brakeman could bind it by a contract to carry appellee and her children from Longview Junction to Palestine, a point not on its line of railway. The contention is that appellant became bound for the consequences resulting to appellee and her children, became of her reliance on the false representation made to her by the porter and brakeman that the train would go through, if, as we think must be conceded to be true, the porter and brakeman were without authority to bind appellant by a contract to carry appellee from the point it had undertaken to carry her to to a point off of its line of railway, certainly they were without authority to bind it by representations as to the movements of trains on a line of railway operated by another company and not by appellant. To hold otherwise would be to say, as we think should not be said, that a railway company, contracting to carry to a nearby point on its line a person who wished to go over same and connecting lines to a point on one of the latter a thousand or more miles distant, could be made liable to such person for the expense, inconvenience etc., arising from delays on such connecting lines, resulting to him because of his reliance upon representations made by its porter and brakeman as to the movement of trains on such connecting lines. To so hold, it seems to us, would be unreasonable. Furnishing to persons appellant had undertaken to carry to points on its line information about the movement of trains on other lines of railway was outside the scope of the duties the porter and brakeman were employed to perform; and appellant should not, we think, be held bound to respond in damages to appellee for injury she suffered because she relied upon information they furnished her which turned out to be false. Legally she had no right to rely upon, as representations of appellant, statements made to her by its employés who were without authority, real or apparent, to act for it in making same.

The judgment will be reversed, and judgment will be here rendered that appellee take nothing by her suit against appellant.